(62 South. 124.)

No. 19,372.

MOSES v. NEW ORLEANS GREAT NORTHERN R. CO. et al.

(May 12, 1913.)

*(Syllabus by Editorial Staff.)*

RAILROADS (§ 398*)—INJURIES TO PERSONS ON TRACKS—ACTIONS—EVIDENCE.

In an action against a railroad company for the cutting off of his arm, which plaintiff claimed extended over the track after he had been rendered unconscious by a fall occasioned by a wire on the station platform, evidence *held* not sufficient to warrant a recovery.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. § 398.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Sam Moses against the New Orleans Great Northern Railroad Company and the New Orleans Terminal Company. From a judgment for defendants, plaintiff appeals. Affirmed.

Meyer S. Dreifus and Alex. C. O'Donnell, both of New Orleans, for appellant. Dufour & Dufour, of New Orleans, for appellee New Orleans Terminal Co. Farrar, Jonas, Goldsborough & Goldberg, of New Orleans, for appellee New Orleans Great Northern R. Co.

PROVOSTY, J. Plaintiff is a colored laborer. His hand was run over and crushed by an engine and tender of the defendant company. The accident happened at night in the passenger station of the defendant company. Plaintiff's story is that while walking on the platform provided for passengers alongside of the track he stumbled upon some wire and fell, and lay there unconscious until a locomotive came along and crushed his hand. It was about 9:30, he says, when he fell; he looked at the clock. The accident happened at 1 o'clock; so that, if his story be true, he lay unconscious 3½ hours. No one but he ever saw the wire upon which he says he tripped. He himself did not see it before his fall, but only "after my arm was cut off, after I woke up; but I was in such misery I was not studying about no wire." It was, he says, "a piece of wire coming across the track." The platform was no place for any piece of wire to be, and the caretaker of the station had duly done his work at 6 o'clock that evening and seen no wire at the place in question. The rail upon which plaintiff's hand was crushed was not the one next to the platform, but the other, as was shown by the blood marks upon it; and the place where plaintiff lay while unconscious was not between the rail and the platform, but between the outer rail and the 18-inch high concrete foundation of the station fence, as clearly appeared from traces on the ground. To have gotten to this place in his alleged fall, plaintiff would have had to have lurched at least 10 feet, or else rolled across the track, over the two high rails. He told the policeman who came to his assistance that the locomotive had knocked him down. The engineer in charge of the engine, and another engineer seated on the fireman's box, were looking ahead, but did not see plaintiff. This is explained by the fact that the only light in the station was from the street outside, so that none reached him where he lay within the shadow of the 18-inch high concrete foundation of the station fence. Only one wheel had a blood mark upon it, the left hind wheel of the tender. So that he must have stretched out his hand after the other wheels had passed him. It was Saturday night, and he had come to town that evening after his week's work. Now, to a very drowsy railroad laborer, this dark place alongside of the fence in the station might have appeared a good one for taking a nap; and the passing locomotive would have aroused such a sleeper, and he might have stretched his hand just in time to be caught by the last wheel of the tender. Our learned Brother of the trial court, who heard the case without a jury, did not believe plaintiff's story. The only real fall of plaintiff was when he fell asleep; the most charitable view to take is that he did stumble upon the wire and fall, as he says—in his dreams.

Judgment affirmed.